CLARK v. NEW YORK MILITARY ACADEMY REALTY CO.

(Supreme Court, Appellate Division, Second Department.    June 7, 1912.)

1. MASTER AND SERVANT (§ 196*)—INJURIES TO SERVANT—FELLOW SERVANTS.

Where four experienced carpenters were all employed for a common purpose and all worked to the same end, to wit, the construction of scaffolding for a new building, they were fellow servants, though two of them worked in one team and two in another, and though two of them did one part of the work at one time and another part at another time.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 486–488;  Dec. Dig. § 196.*]

2. MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—DEFECTIVE SCAFFOLDING.

Plaintiffs and two other experienced carpenters were employed specially to construct scaffolding for the erection of a building. They were supplied with an abundance of proper material and worked in teams; plaintiffs working in one team and the other two in the other. The scaffolding was constructed on the figure four plan, and, after the third story had been constructed. a leg of the fourth story scaffold was constructed by plaintiffs by making use of the third story bracket which had been constructed by the other team. As both teams were engaged in constructing the fifth story scaffold. the third story bracket broke, and plaintiff and his companion were injured. *Held*, that defendant was not negligent either with reference to the construction, inspection, or use of such third story bracket, and that there was therefore no liability under labor law (Consol. Laws 1909, c. 31) § 18, imposing a liability on employers for the construction of unsafe scaffolding provided for employés and directing the material and manner of construction.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

Appeal from Trial Term, Orange County.

. Actions by Patrick Clark and by one White against the New York Military Academy Realty Company.  From a judgment for plaintiff in the Clark Case for $5,000 damages, and from a judgment for plaintiff in the White Case for $1,000 damages, and from an order denying defendant's motion for a new trial in each case, it appeals.  Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Martin T. Manton, of Brooklyn (William Dike Reed, on the brief), for appellant.

Graham Witschief, of Newburgh, for respondent.

WOODWARD, J.  This case and the case of White v. New York Military Academy Realty Company were tried together.  The plaintiffs were injured in the same accident and under the same circumstances, and the question involved in the two appeals is identical.  For convenience, we will simply consider the case of Patrick Clark, who has a verdict of $5,000;  for, upon the determination of his case, we must necessarily rest our decision in the White Case.

The plaintiff was employed by the defendant as a scaffold builder. White, the plaintiff in the companion action, was employed in a like

capacity, as were two others by the name of Barr and McFerran. They were all carpenters of several years of experience, and their work was that of scaffold builders. The actions were brought under the provisions of the Employers' Liability Act (Consol. Laws 1909, c. 31, §§ 200–204), but this claim was abandoned upon the trial, and the case was submitted to the jury upon the theory that in some manner the defendant was liable under the provisions of section 18 of the Labor Law.

[1] The plaintiff's theory is that he and White were partners, that they worked in team, and that Barr and McFerran constituted a second team, and that the plaintiff and White were not responsible for the acts or negligence of Barr and McFerran, although the testimony does not indicate that the defendant had any notice of this nice distinction in the character of the employment. They were all employed for a common purpose and all worked to this end, and whether in practice two of them did one part of the work at one time, and two of them another part at another time, we are unable to discover any different rule of law in respect to their conduct than would be applicable in an action at common law. The facts as they might be found from the plaintiff's evidence appear to be about as follows:

The work under way appears to have been a building of at least five stories in height. The evidence, so far as we are able to discover, is undisputed that there was plenty of material of a suitable character for the construction of the scaffolds, and these four men had been employed to construct these scaffolds, on which the masons and others performed their work. The scaffolds which had been constructed previous to the accident by these men appear to have been made by building what are known as figure four brackets out from the windows and placing planks upon them; the two outside planks being nailed to these brackets. These brackets are made by placing a timber upon the window sill, projecting out from the same a sufficient width to hold the planks. Then a brace is fastened to the outside end of this timber on the lower side, and then nailed to the side of the building in the form of a figure four. Scaffoldings of this character had been used for a considerable time. The building, we may infer from the evidence, had reached five stories at some point, and was above the fourth story at the point of the accident on the 11th day of July, 1911, when the plaintiff received his injuries. Barr and McFerran, it is claimed, selected the materials, and constructed the scaffolding at the third story. When the work was completed at that point brackets were made out of the windows for the fourth story, and plaintiff and White appear to have stood upon the fourth story scaffolding, and to have raised the planks up from the third to the fourth floor scaffolding. The work for which the fourth story scaffolding had been erected was completed, and the plaintiff and White were engaged in the construction of the fifth story scaffolding, with the assistance of Barr and McFerran, when the accident happened. It appears that at the point of the accident there was a difference in the construction of the building, which required a somewhat different construction of the scaffolding, and to this end a leg had been placed upon one of the brackets which

had been left in the third story window, and this extended upward, and formed a part of the support of the fourth story scaffolding. This leg was put up by the plaintiff and White, who concededly constructed the fourth story scaffolding, making use of the third story bracket, for the upright leg, and which bracket it is claimed was constructed by Barr and McFerran. On the morning of the accident, the plaintiff and White were upon the fourth story scaffolding, making ready to shift the planks to the fifth story. They were standing out upon the edge of the ledger (the supporting timber of the figure four bracket), when the scaffolding tipped and went down with them, and, while no one pretends to know just what happened, the plaintiff's theory, and the only one upon which the recovery can possibly rest, is that a piece of board, painted red on one side, and used by Barr and McFerran as a brace in the construction of the bracket at the third floor, broke and caused the upright leg to lose its support, and that the whole structure fell by reason of this defective board at the third floor, which the plaintiff and the court concurred in holding to be a scaffolding within the meaning of section 18 of the Labor Law.

Upon this basis of evidence, and upon this theory, the plaintiff has a verdict for $5,000, and his companion has been adjudged to have been injured to the extent of $1,000. But where are we to find the neglect of a duty owed by the defendant to this plaintiff?

[2] Here were four competent and experienced carpenters employed specially to construct the scaffolding for the erection of a military academy. They were supplied with an abundance of proper materials for the construction of such scaffolds as should be required, and the theory on which a recovery has been permitted is that two of these four men having selected the materials for the construction of the third story scaffolding (which appears to have fully served its purpose, and to have been taken away with the exception of one of the window brackets), the defendant became liable because in the construction of further scaffolding the plaintiff and White elected to make use of this isolated bracket for the support of their scaffolding, and that the particular piece of material used as a brace in this bracket, subjected to a strain which was clearly not contemplated in the construction of the third story scaffolding as a whole, broke, and caused the scaffolding to fall. This is not the law. Men employed in a common occupation for the securing of a common result, working together without the intervention of a superintendent or any one in authority over them, are still subject to the rule that they accept the risk of the carelessness of competent fellow servants, and this rule cannot be abrogated by any mere custom of such laborers to work in teams. Certainly the defendant cannot be held to have made this single bracket, which had served its obvious purpose of supporting the third story scaffolding, a place in which the plaintiff and White were called upon to work, for this is the essential effect of section 18 of the Labor Law in respect to scaffolds. The plaintiff and White, with their companions, were selected because of their competency as scaffold builders. They were not to work upon the scaffoldings. They were to construct them for others to work upon, and, when it became necessary to make the scaf-

folding for the fourth floor, the master gave no directions, and was under no obligation to do so, as to how the scaffolding should be constructed, in so far as the plaintiff and White were concerned. The defendant had furnished an abundance of proper materials and competent fellow servants to construct the necessary scaffolding, and while they could not delegate this duty in such a manner as to avoid responsibility to third persons placed to work upon such scaffoldings, as against the plaintiff and those engaged in the construction of the scaffolding, they owed no other duty. There was plenty of materials, as the record informs us, for the construction of the necessary scaffolding. We must assume that, if it was necessary, there was material enough to construct entirely new scaffolding from the ground up. There was no compulsion about the use of the bracket at the third floor; that bracket when made use of by the plaintiff and White in the construction of the fourth floor scaffolding became a part of that scaffolding by its adoption into the new structure, and it was as much the duty of the plaintiff and White in making use of this bracket to inspect its materials as it would have been if the bracket had been taken down and thrown upon the ground, and had been taken up and made use of in the new scaffolding. In other words, the plaintiff and White, who concededly constructed the scaffolding which fell and produced their injuries, must be deemed to have selected this bracket, not as a scaffolding on which they were required to perform labor, but as a part of the materials which the defendant had furnished for the purpose of constructing the scaffolding, and, there being an abundance of proper materials, the master cannot be held responsible because the plaintiff and his fellow laborers picked out a piece which proved defective.

This view is not changed by the alleged fact that similar practice had prevailed at another point in the building. The master did not undertake to prescribe the details of construction in these scaffolds. It employed competent men, and provided proper materials, leaving the details to be worked out by these competent men, and the mere fact that they had made use of a bracket at another point did not commit the master to this practice, nor call upon the master to see to it that every bracket placed for the support of a scaffolding should, after the scaffolding was torn down, remain a proper support for another scaffold, or that it should constitute a place to work. Section 18 of the Labor Law has been given a very wide scope, but no adjudicated case has gone to this extent, and we see no possible reason for so extending it. If the plaintiff had been one of the bricklayers and had been sent to work upon this platform and it had fallen, a different question would have been presented, but here the very men who selected the materials, concurred in the plan of construction, and worked in the consummation of the plan are seeking to hold the master liable for their own neglect, and this without any very reliable evidence even as to the actual cause of the accident. One witness alone testifies that after the accident he looked over the wreckage, and found therein a board, one side painted red, which he had previously seen used as a brace on one of the brackets, and that this board was broken in two

in the middle. No other witness—and others examined the wreck—found any such board or found any board broken, and the whole case is made to rest upon this one witness, who gives the theory of the accident. The plaintiff and White do not pretend to know what caused it, and it seems quite as likely that the accident was caused by imperfect construction as from any defect in the materials, but, in any event, the plaintiff, having made his own selection of materials and having constructed the scaffold, is not in a position to recover here in the absence of some evidence to show that he was under some necessity of making use of this alleged defective board.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event. All concur.